UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

        -against-                             S20 06 Crim. 0008 (LAK)

JOHN TOMERO, et al.,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### MEMORANDUM OPINION

Appearances:

    Miriam Rocah
    Jonathan Kolodner
    Eric Snyder
    Assistant United States Attorneys
    MICHAEL J. GARCIA
    UNITED STATES ATTORNEY

    Richard Levitt
    LAW OFFICES OF RICHARD LEVITT
    *Attorneys for Defendant Bellomo*

LEWIS A. KAPLAN, *District Judge.*

        The superseding indictment charges various acts in connection with the Genovese organized crime family, one of the six "mafia" families that are said to dominate organized crime in the New York and New Jersey areas.[1] The government moves for an anonymous and partially sequestered jury.

---

[1] S20 Indictment (docket item 642) ¶ 3.

2

*Facts*

The core of the indictment are charges under the Racketeer Influenced and Corrupt Organizations Act ("RICO").[2] The enterprise is the alleged Genovese family, of which six defendants are said to be members or associates.[3] Five of those defendants – Liborio Bellomo, Pasquale DeLuca, Arthur Nigro, Ralph Balsamo, and Gerald Fiorino – are charged in Counts One and Two with conspiring to conduct and with conducting the affairs of the enterprise through a pattern of racketeering activity including, among other things, murder and conspiracy to murder,[4] extortion and conspiracy to extort,[5] obstruction of justice by lying to a grand jury,[6] and witness tampering by means of intimidation and threats.[7] Other counts of the indictment charge these defendants with a wide variety of substantive offenses, most of which are alleged as RICO predicate offenses in the first two. They include also, *inter alia*, charges of conspiracy to distribute cocaine,[8] possession of a firearm

---

[2] 18 U.S.C. § 1961 *et seq.*

[3] S20 Indictment ¶ 10.

[4] Racketeering Act One.

[5] Racketeering Acts Two, Three, Nine, Twelve, Thirteen.

[6] Racketeering Act Seven.

[7] Racketeering Acts Five, Six.

[8] Count Twenty-Four.

3

in relation to a crime of violence,[9] and conspiracy to traffic in firearms.[10]

The three remaining defendants are not named in the RICO counts. Louis Moscatiello, also an alleged member of the Genovese family, is charged in Counts Six and Seven with extortion conspiracy and extortion. Walter Galiano and Anthony Negri, Sr., are charged in Counts Twenty-Two and Twenty-Three respectively with making false statements to the FBI.

The government asks the Court to order that

> "(1) all prospective jurors on the *voir dire* panel, as well as the jurors and alternates ultimately selected, not . . . reveal their names, addresses, or places of employment; (2) the jurors be kept together during recesses and that the United States Marshals Service take the jurors to lunch, or provide them lunch, as a group each day throughout the trial; and (3) the United States Marshals transport the jurors together from the Courthouse each day to an undisclosed central location, from which they can leave for their respective communities."[11]

Defendants oppose the motion, but seek permission to use a juror questionnaire in the event it is granted.

*Discussion*

In this Circuit, "a court may order the empaneling of an anonymous jury upon '(a) concluding that there is strong reason to believe the jury needs protection, and (b) taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental

---

[9] Count Twenty-Five.

[10] Count Twenty-Six.

[11] Gov. Mem. 1.

rights are protected.'"[12]

I.   *Strong Reason for Protection*

In determining whether there is a "strong reason" to believe a jury needs protection, courts consider whether (1) the charges against the defendants are serious, (2) there is a substantial potential threat of corruption to the judicial process, and (3) considerable media coverage of the trial is anticipated.[13]

In *United States v. Gotti*,[14] the Second Circuit held that an anonymous jury was warranted where (1) the defendants were charged with membership in the Gambino family, a powerful crime organization, (2) the defendants included the alleged head of the family and another high ranking member whose pretrial detention had been ordered on the ground that he was dangerous, (3) the indictment charged two defendants with witness tampering in connection with

---

[12] *United States v. Gotti*, 459 F.3d 296, 345 (2d Cir. 2006) (quoting *United States v. Paccione*, 949 F.2d 1183, 1192 (2d Cir. 1991)).

[13] *United States v. Bellomo*, 954 F. Supp. 630, 654 (S.D.N.Y. 1997); *United States v. Muyet*, 945 F. Supp. 586, 591 (S.D.N.Y. 1996) (citing cases); *see Paccione*, 949 F.2d at 1192 (collecting cases holding that anonymous jury was warranted where (a) "the defendants have been charged with grand jury tampering and the trial is expected to attract publicity," (b) "the defendant has a history of attempted jury tampering and a serious criminal record," (c) "there had been extensive pretrial publicity and there were abundant allegations of dangerous and unscrupulous conduct," or (d) "the defendants were alleged to be very dangerous individuals who had participated in several mob-style killings and there was strong evidence of the defendants' past attempts to interfere with the judicial process" (quotations omitted)).

[14] 459 F.3d 296.

grand jury testimony, and (4) intense media coverage and public interest in the trial was expected.[15]

The facts of this case are closely similar to those of *Gotti*. Defendants are charged with membership in the Genovese family, a powerful organization that allegedly operates through fear, intimidation, assault, and murder.[16] Bellomo is alleged to have been the "acting boss" of the family and other defendants are alleged to be high ranking members.[17]

Two of the defendants already have been found to be dangers to the community. Bellomo pleaded guilty in 1997 before this Court to two counts of extortion conspiracy[18] and received upward departures at sentencing because of his position as acting boss of the Genovese family and his involvement in a conspiracy to commit a Genovese-related murder.[19] Balsamo – allegedly a soldier in the Genovese family who carried messages to and from Bellomo while he was incarcerated[20] – was denied bail on the ground that his release likely would present a danger to the community.[21] Furthermore, the charges in the indictment against these and other defendants are quite serious. They include murder and murder conspiracy, various acts of extortion, and the possession

---

[15] *Id.* at 346.

[16] *See* S20 Indictment ¶ 12.

[17] *See id.* ¶ 10.

[18] *See United States v. Bellomo*, No. S1 96 Cr. 430 (LAK) (S.D.N.Y. filed June 10, 1996), Plea Tr., Feb. 10, 1997 (docket item 285).

[19] *See id.*, Sentencing Tr., Sept. 22, 1997 (docket item 419).

[20] S20 Indictment ¶ 10.

[21] *See* Order, June 21, 2006 (docket item 257).

6

of a firearm in connection with a crime of violence, among other things.

There is a substantial risk also that the judicial process will be threatened. The indictment alleges two instances of tampering with witnesses by means of threats and intimidation, one instance of obstructing justice by lying to a grand jury, and two instances of making false statements to the FBI. This indicates that there is probable cause to believe defendants are willing to interfere with the administration of justice. Furthermore, "the defendants, if convicted, could spend considerable time in prison."[22] Bellomo and DeLuca, who are charged with murder in aid of racketeering, for example, could face life sentences.[23] "Given the seriousness of the charges and the exposure of the defendants to long periods of incarceration, there are significant incentives to attempt to subvert the trial process by threats or violence."[24] "[A] jury, unless shielded, well could fear malevolent action by defendants accused of these crimes."[25]

Finally, this trial is expected to receive considerable media attention due to Bellomo's alleged position as acting head of the Genovese family and the government's allegations that several other defendants were high ranking members. The government claims it has reeled in the "big fish," so to speak. Indeed, this case already has been covered extensively in the press, as demonstrated by the numerous newspaper and magazine articles attached as exhibits to the government's

---

[22] *United States v. Scala*, 405 F. Supp. 2d 450, 452 (S.D.N.Y. 2005).

[23] Under 18 U.S.C. § 1959(a)(1), murder in aid of racketeering is punishable by death or life in prison. The government has elected not to seek the death penalty for Bellomo or DeLuca.

[24] *Scala*, 405 F. Supp. 2d at 452.

[25] *Id.*

memorandum. And "[g]iven the amount of press coverage that organized crime traditionally has received, the profile of the trial is likely to become higher. In short, this case has received, and likely will continue to receive, substantial coverage in the media."[26]

The cases defendants cite in which anonymous juries were denied are inapposite. In *United States v. Millian-Colon*,[27] the indictment did not charge numerous offenses aimed at disruption of the administration of justice.[28] Nor were there allegations that defendants were associated with a powerful organized crime family.[29] Similarly, in *United States v. Gambino*,[30] the defendants were "not charged with jury tampering or with obstruction of justice" and the case had not yet received any media attention.[31] The defendants in *United States v. Coonan*,[32] were alleged

---

[26]   *Id.* at 453.

If certain defendants were tried alone, there arguably would not be as strong a case for an anonymous jury in their respective trials. Galiano and Negri, for example, are not alleged to be members of the Genovese family and are not charged with serious or violent crimes. Nevertheless, "where one co-defendant warrants an anonymous jury, the other co-defendant's due process rights are not violated by a refusal to sever." *Id* at 453 n.18 (citing cases).

[27]   834 F. Supp. 78 (S.D.N.Y. 1993).

[28]   *Id.* at 83 ("[D]espite charges of violent conduct contained in an indictment, some defendants seem to draw the line at interfering with those who are engaged in the administration of the judicial process." (citation and quotation omitted)).

[29]   *Id.* at 84 ("In the case at hand, the Government has offered no proof, beyond innuendo, that any defendant is a member of an organized crime family.").

[30]   818 F. Supp. 536 (E.D.N.Y. 1993).

[31]   *Id.* at 540.

[32]   664 F. Supp. 861 (S.D.N.Y. 1987).

to be dangerous, but there were no allegations that they had tried to interfere with the judicial process.[33] And the court in *United States v. Corrao*[34] held that the government's fears of jury tampering were speculative and the likelihood of significant media interest remote.[35]

In this case, by contrast, defendants are charged with serious violent offenses and numerous counts of obstruction of justice, witness tampering, and making false statements, all in connection with an allegedly violent, corrupt, and powerful organization that is the subject of great media interest. Accordingly, there is a strong reason to believe that the jury will require protection.

II.     *Reasonable Precautions*

Empaneling an anonymous jury "touches on sensitive individual rights," as it potentially undermines the presumption of innocence.[36] The Court, however, intends to "conduct . . . a *voir dire* designed to uncover bias as to issues in the cases and as to the defendant."[37] In addition, the Court will "give the jurors a plausible and nonprejudicial reason for not disclosing their identities or for taking other security measures"[38] and will charge them fully on the presumption of

---

[33] *Id.* at 862.

[34] No. 86 Cr. 556 (SWK), 1988 WL 36329, *1 (S.D.N.Y. Apr. 11, 1988)

[35] *Id.* at *1.

[36] *United States v. Thomas*, 757 F.2d 1359, 1365 (2d Cir. 1985); *see id.* at 1363-65.

[37] *United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994).

[38] *Id.* at 801 (quoting *Paccione*, 949 F.2d at 1192); *see Bellomo*, 954 F. Supp. at 656 ("[T]he Court will present a neutral explanation to the jury for their anonymous status that will seek

innocence.[39] These precautions will suffice to protect defendants' trial rights.

Defendants request the use a jury questionnaire so that they may obtain "more complete information" about jurors in the event an anonymous jury is empaneled.[40] This request is denied.

Whether to use a jury questionnaire is within the discretion of the Court.[41] While some courts on occasion have used questionnaires in cases involving anonymous juries,[42] defendants cite no case holding that such a measure is mandatory when an anonymous jury is empaneled. Moreover, the use of a questionnaire in this case is unnecessary. As this Court noted in *United States v. Scala*,[43] in which the government requested the same measures as here,

> "[t]he government's request would not limit inquiry into the occupations of the jurors, only information about their specific places of employment. The defense therefore would have access to information about the jurors' occupations for use in determining peremptory challenges. Further, the motion seeks only to preclude the

---

to preclude any negative inferences against the defendants. Such an instruction will adequately protect the defendants from prejudice.").

[39] *See United States v. Vario*, 943 F.2d 236, 241 (2d Cir. 1991) (annonymous jury did not violate defendant's rights where "the district court fully instructed the jurors on the presumption of innocence").

[40] Def. Br. 2.

[41] *See United States v. Bakker*, 925 F.2d 728, 733 (4th Cir. 1991) (affirming district court's refusal to use questionnaire as district court has broad discretion over scope of *voir dire*) (citing *Rosales-Lopez v. United States*, 451 U.S. 182, 188-89 (1981) (plurality opinion)); *see also* Order, Feb. 2, 2007 (docket item 543) (denying Bellomo's request for jury questionnaire).

[42] *See, e.g.*, *Thai*, 29 F.3d at 801 (approving use of jury questionnaire as means of conducting *voir dire* of anonymous jury).

[43] 405 F. Supp. 2d 450.

disclosure of jurors' names and 'addresses.' The Court intends to inquire as to the county in which each prospective juror resides. Moreover, the defense will have ample opportunity to suggest areas of inquiry for *voir dire*. Thus, the defense should have no problem in assessing the possible bias of prospective jurors."[44]

Defendants' rights therefore will be protected adequately even without use of a jury questionnaire.

*Conclusion*

The Court is satisfied that the special circumstances of this case demonstrate the necessity for the measures proposed by the government and is persuaded that any prejudice to the defense can be dealt with through *voir dire* and proper instructions to the jury. Accordingly, the government's motion is granted. Defendants' motion for a jury questionnaire is denied.

SO ORDERED.

Dated:       May 15, 2007

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[44] *Id.* at 454.